UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------- X
DCR MARKETING INC. and DCR  :
STRATEGIES LEGAL INC.,  :  Case No. 1:19-cv-03249
 :
    Plaintiffs,  :
 :
v.  :
 :
JOSEPHINE LEE PEREIRA (aka  :
JOSEPHINE POTENTE aka JOSEPHINE  :
ROBINSON),  :
 X
    Defendant.
----------------------------------------------------

# COMPLAINT

Plaintiffs DCR Marketing Inc. ("DCR Marketing") and DCR Strategies Legal Inc. ("DCR Strategies"), by and through their attorneys, hereby assert this Complaint against Defendant Josephine Lee Pereira (aka Josephine Potente aka Josephine Robinson) ("Ms. Pereira"), and state as follows:

## PARTIES

1. DCR Strategies Legal Inc. is a New York corporation with its principal place of business in Mississauga, Ontario. DCR Strategies is in the business of providing prepaid card services to merchants.

2. DCR Marketing Inc. is a New York corporation with its principal place of business in Mississauga, Ontario. DCR Marketing is in the business of providing prepaid card services to merchants.

3. Josephine Lee Pereira (aka Josephine Potente aka Josephine Robinson) is an individual residing in Westchester County, New York. Ms. Pereira formerly provided services to

Plaintiffs in New York State as their attorney for over seven years. Ms. Pereira's New York State Bar Number is 4367579.

## JURISDICTION AND VENUE

4. This court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States, and under 18 U.S.C. § 1030 because this action alleges violations of the Computer Fraud and Abuse Act ("CFAA").

5. This Court has personal jurisdiction over Ms. Pereira because Ms. Pereira resides in and transacts business in the State of New York.

6. Venue in this Court is proper for this action pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, and a substantial part of the property that is the subject of this action is situated in this judicial district.

## ALLEGATIONS

### The Companies

7. Diana Fletcher and Huguette Masse, each of whom reside in Canada, own "DCR" and "TruCash" companies, including DCR Strategies and DCR Marketing, that transact business in the United States. DCR Strategies and DCR Marketing had retained the legal and compliance services of Ms. Pereira to assist with prepaid card and merchant transactional service business they transact worldwide.

8. Ms. Pereira was authorized to incorporate DCR Marketing as a New York corporation on August 2, 2006. Together, Ms. Fletcher and Ms. Masse were the sole owners of DCR Marketing, and are its sole owners today.

9.	Ms. Pereira was also authorized to incorporate DCR Strategies as a New York corporation — then known as "Mercantile Legal Inc." — on October 9, 2015.  Together, Ms. Fletcher and Ms. Masse were the sole owners of Mercantile Legal Inc.  In 2017, Mercantile Legal Inc. took steps necessary to change its name to "DCR Strategies Legal Inc." (referred to herein as "DCR Strategies").  DCR Strategies had authorized Ms. Pereira to file name-change documents on August 29, 2017.  Together, Ms. Fletcher and Ms. Masse were the sole owners of DCR Strategies and are the sole owners of DCR Strategies today.

10.	Ms. Fletcher and Ms. Masse were appointed to the board of directors of DCR Strategies and DCR Marketing.  Ms. Fletcher and Ms. Masse have served as, and currently are, their only directors.

11.	Ms. Pereira is neither a shareholder, a director nor an officer of DCR Strategies or DCR Marketing.  Ms. Pereira provided legal and compliance services to DCR Strategies and DCR Marketing as their outside counsel.  Ms. Pereira does not have an employment agreement and is not an employee of DCR Strategies or DCR Marketing.

## The Accounts

12.	For its prepaid card and merchant transactional service business in the United States, DCR Strategies and DCR Marketing require bank accounts in the United States, into which their customers deposited funds to load onto prepaid cards for incentives and rewards for their employees and customers, and to settle transactions which DCR Strategies and DCR Marketing acquired and processed.  Accounts also are necessary for DCR Strategies and DCR Marketing to transfer funds to pay merchant accounts.

**The Citibank Account**

13. DCR Strategies had authorized Ms. Pereira, as a representative of DCR Strategies in the United States, to open an account for DCR Strategies at Citibank, N.A. ("Citibank") for the deposit and intracompany transfer of funds of DCR Strategies for its prepaid card and merchant transactional service business. Ms. Pereira opened an attorney escrow account or "IOLTA" for DCR Strategies at Citibank.[1]

14. On August 8, 2018, Ms. Pereira opened a CitiEscrow Control Interest Account, No. ******2596 (the "Citibank Account"), at Citibank in the name of DCR Strategies for the deposit and intracompany transfer of funds for prepaid cards and merchant transactional services that DCR Strategies sold. The Citibank Account was and — apparently — is an IOLTA. An IOLTA was not the appropriate type of account for funds for prepaid cards that DCR Strategies sold. DCR Strategies was not apprised of the nature of an IOLTA, nor of the differences between an IOLTA and other types of accounts. Properly apprised, DCR Strategies would not have authorized Ms. Pereira to open an IOLTA. Nor would Citibank have opened an IOLTA under KYC regulations. Ms. Pereira's use of an IOLTA account for DCR's funds was a breach of the code of professional conduct for New York attorneys.

15. Ms. Pereira had online login credentials for the Citibank Account, and shared them with Nelson Shehaj, the Director of Finance for DCR Strategies.

16. Approximately five (5) months later, on January 16, 2019, DCR Strategies discovered it was unable to access the Citibank Account. At that time, representatives of DCR Strategies corresponded with Ms. Pereira about their inability to access the account.

---

[1] Interest on Lawyer Trust Accounts ("IOLTA") are special interest-bearing accounts into which attorneys deposit client funds to be held in trust for future use. IOLTA accounts are highly regulated by each respective state bar association.

17.     On information and belief, on or about January 16, 2019, Ms. Pereira changed the online login credentials for the Citibank Account.  She did so without permission from DCR Strategies, and without informing DCR Strategies.  Ms. Pereira intentionally accessed a protected computer without authorization (or exceeding her authorized access), and thereby fraudulently obtained information contained in a financial record of a financial institution.  Ms. Pereira did so knowingly and with intent to defraud DCR Strategies, and by means of such conduct, fraudulently obtained access to hundreds of thousands of dollars being held in the Citibank Account, as set forth below.

18.     Ms. Pereira responded to DCR Strategies' representatives via email, stating that Citibank had notified her that it was "closing the business account and my personal account.  Several wires went out yesterday back to back that triggered compliance review and they suspect money transmitter activity and or fraud."  A true and correct copy of Ms. Pereira's email is attached as <u>Exhibit 1</u>.  On information and belief, those statements by Ms. Pereira were false.

19.     On or about January 17, 2019, which was the next day, Ms. Pereira abruptly ended her relationship with DCR Strategies.

20.     On information and belief, after January 16, 2019, and after changing the online login credentials and misrepresenting to DCR Strategies that Citibank was closing the Citibank Account, Ms. Pereira transferred money out of the Citibank Account.  On information and belief, Ms. Pereira transferred money from the Citibank Account into her personal savings account at Citibank.

21.     Ms. Pereira did not have authority to transfer money in or from the Citibank Account into her personal savings account ******0884 at Citibank.  Ms. Pereira did not even have

authority to manage DCR Strategies' funds pursuant to the terms of Section 8.01 of DCR Strategies' By-Laws. Section 8.01 of the By-Laws provides, in pertinent part:

> The funds of [DCR Strategies] shall be deposited in its name with such banks, trust companies or other depositories as the board of directors or the officers may from time to time designate. All checks, notes, drafts and other negotiable instruments of [DCR Strategies] shall be signed by such officer or officers, employee or employees, agent or agents as the board of directors may time to time designate. No officers, employees or agents of [DCR Strategies], alone or with others, shall have power to make any checks, notes, drafts or other negotiable instruments in the name of [DCR Strategies] or to bind [DCR Strategies] thereby, except as provided in this section.

Ms. Pereira was not designated by the board of directors of DCR Strategies as an officer, employee, or agent with the authority to sign checks, notes, drafts, and other negotiable instruments.

22.  DCR Strategies immediately informed its customers not to deposit funds into the Citibank Account. However, weeks later, on February 12, 2019, an international wire transfer was originated from Banco Santander S.A. ("Santander") to the Citibank Account in the amount of $98,413.20. This transfer was made by a customer of DCR Strategies in error. The payment was intended for DCR Strategies, but the customer failed to update its payroll template for February in accordance with DCR Strategies' instruction that its customers no longer deposit funds into the Citibank Account.

23.  When the customer learned of the error, the customer attempted to recall the transfer. On March 4, 2019, Santander informed the customer that it was unable to recall the transfer.

24.  As of February 12, 2019, the total balance of the funds in the Citibank Account should have been $270,420.02 (the "Citibank Funds"), according to DCR Strategies' records. As such, the amount in dispute exceeds $5,000.00.

25.  On information and belief, Citibank has initiated an investigation of wire activity into and out of the Citibank Account by Ms. Pereira and frozen the Citibank Funds it has traced.

26. Both DCR Strategies and Ms. Pereira claim a superior right to possession of the Citibank Funds, and other funds that were transferred or withdrawn from the Citibank Account.

### The Bank of America Account

27. DCR Marketing had authorized Ms. Pereira, as a representative of DCR Marketing in the United States, to open an account at Bank of America, N.A. ("BoA") for the deposit and intracompany transfer of funds of DCR Marketing for its prepaid card business.

28. Ms. Pereira opened a Business Advantage Checking Account, No. ********0412 (the "BoA Account"), at BoA in the name of DCR Marketing for the deposit and intracompany transfer of funds for prepaid cards that DCR Marketing sold.

29. Ms. Pereira had online login credentials for the BoA Account, and shared them with Nelson Shehaj, the Director of Finance for DCR Marketing.

30. On or about August 2, 2017, DCR Marketing discovered it was unable to access the BoA Account. At that time, representatives of DCR Marketing corresponded with its counsel, Ms. Pereira, about their inability to access the account.

31. On information and belief, Ms. Pereira changed the online login credentials for the BoA Account. She did so without permission from DCR Marketing and without informing DCR Marketing. Ms. Pereira intentionally accessed a protected computer without authorization (or exceeding her authorized access), and thereby fraudulently obtained information contained in a financial record of a financial institution. Ms. Pereira did so knowingly and with intent to defraud DCR Marketing, and by means of such conduct, fraudulently obtained access to hundreds of thousands of dollars being held in the BoA Account.

32. Ms. Pereira responded to DCR Marketing's representatives, stating that funds in the BoA Account were frozen.

33. On information and belief, after changing the online login credentials, Ms. Pereira transferred money out of the BoA Account. On information and belief, Ms. Pereira transferred money from the BoA Account into a personal account and/or withdrew the funds in the account.

34. Ms. Pereira did not have authority to transfer money from the BoA Account into a personal account or to withdraw funds from the account. Ms. Pereira did not even have authority to manage DCR Marketing's funds pursuant to the terms of Section 8.01 of DCR Marketing's By-Laws. Section 8.01 of the By-Laws provides, in pertinent part:

> The funds of [DCR Marketing] shall be deposited in its name with such banks, trust companies or other depositories as the board of directors or the officers may from time to time designate. All checks, notes, drafts and other negotiable instruments of [DCR Marketing] shall be signed by such officer or officers, employee or employees, agent or agents as the board of directors may time to time designate. No officers, employees or agents of [DCR Marketing], alone or with others, shall have power to make any checks, notes, drafts or other negotiable instruments in the name of [DCR Marketing] or to bind [DCR Marketing] thereby, except as provided in this section.

Ms. Pereira was not designated by the board of directors of DCR Marketing as an officer, employee, or agent with the authority to sign checks, notes, drafts, and other negotiable instruments.

35. As of July 31, 2017, the total balance of the funds in the BoA Account was $15,910.96 (the "BoA Funds"), but should not have been less than $138,814.64 according to DCR Marketing's records. As such, the amount in dispute exceeds $5,000.00.

36. Both DCR Marketing and Ms. Pereira claim a superior right to possession of the BoA Funds, and other funds that were transferred or withdrawn from the BoA Account.

## The PNC Account

37. DCR Marketing had authorized Ms. Pereira, as a representative of DCR Marketing in the United States, to open an account for DCR Marketing at PNC Financial Services Group,

Inc. ("PNC") for the deposit and intracompany transfer of funds of DCR Marketing for its prepaid card business.

38. Ms. Pereira opened a Business Checking Preferred Account, No. **-****-4959 (the "PNC Account"), at PNC in the name of DCR Marketing for the deposit and intracompany transfer of funds for prepaid cards that DCR Marketing sold.

39. Ms. Pereira had online login credentials for the PNC Account, and shared them with Nelson Shehaj, the Director of Finance for DCR Marketing.

40. On July 6, 2017, DCR Marketing discovered it was unable to access the PNC Account. At that time, representatives of DCR Marketing corresponded with Ms. Pereira about their inability to access the account.

41. On information and belief, Ms. Pereira changed the online login credentials for the PNC Account. She did so without permission from DCR Marketing and without informing DCR Marketing. Ms. Pereira intentionally accessed a protected computer without authorization (or exceeding her authorized access), and thereby fraudulently obtained information contained in a financial record of a financial institution. Ms. Pereira did so knowingly and with intent to defraud DCR Marketing, and by means of such conduct, fraudulently obtained access to hundreds of thousands of dollars being held in the PNC Account.

42. Ms. Pereira responded to DCR Marketing's representatives, stating that funds in the PNC Account were frozen.

43. On information and belief, after changing the online login credentials, Ms. Pereira transferred money out of the PNC Account into a personal account and/or withdrew the funds in the account.

44. Ms. Pereira did not have authority to transfer money from the PNC Account to a personal account or to withdraw the funds in the account. Ms. Pereira did not even have authority to manage DCR Marketing's funds pursuant to the terms of Section 8.01 of DCR Marketing's By-Laws. Section 8.01 of the By-Laws provides, in pertinent part:

> The funds of [DCR Marketing] shall be deposited in its name with such banks, trust companies or other depositories as the board of directors or the officers may from time to time designate. All checks, notes, drafts and other negotiable instruments of [DCR Marketing] shall be signed by such officer or officers, employee or employees, agent or agents as the board of directors may time to time designate. No officers, employees or agents of [DCR Marketing], alone or with others, shall have power to make any checks, notes, drafts or other negotiable instruments in the name of [DCR Marketing] or to bind [DCR Marketing] thereby, except as provided in this section.

45. As of June 30, 2017, the total balance of the funds in the PNC Account was $4,925.16 (the "PNC Funds"), but should not have been less than $122,365.91. As such, the amount in dispute exceeds $5,000.00.

46. Both DCR Marketing and Ms. Pereira claim a superior right to possession of the PNC Funds, and other funds that were transferred or withdrawn from the PNC Account.

## CAUSES OF ACTION

### As and For Their First Cause of Action
### Declaratory Judgment - Citibank Account

47. Plaintiffs repeat and reallege each of the allegations contained in the previous paragraphs above as though fully set forth herein.

48. Ms. Pereira is not a shareholder, director, or officer of DCR Strategies. Ms. Pereira provided legal services to DCR Strategies as its outside counsel.

49. DCR Strategies had authorized Ms. Pereira to open an account for DCR Strategies at Citibank for the deposit of funds of DCR Strategies for its prepaid card business. Ms. Pereira opened an attorney escrow account or "IOLTA" for DCR Strategies at Citibank.

50. Ms. Pereira did not have authority to transfer money in or from the Citibank Account. Nor did Ms. Pereira have authority to manage DCR Strategies' funds. The Citibank Account and Funds belong to DCR Strategies. Ms. Pereira does not have any legitimate claim of right to ownership of the Citibank Account or Funds, and other funds that were transferred or withdrawn from the Citibank Account.

51. Accordingly, DCR Strategies seeks a declaration that it is the rightful owner of the Citibank Account, and that the Citibank Funds, and other funds that were transferred or withdrawn from the Citibank Account, are owned by, due, and payable to DCR Strategies.

### As and For Their Second Cause of Action
### Declaratory Judgment - BoA Account

52. Plaintiffs repeat and reallege each of the allegations contained in the previous paragraphs above as though fully set forth herein.

53. Ms. Pereira is not a shareholder, director, or officer of DCR Marketing. Ms. Pereira provided legal services to DCR Marketing as its outside counsel.

54. DCR Marketing had authorized Ms. Pereira to open an account for DCR Marketing at BoA for the deposit of funds of DCR Marketing for its prepaid card business.

55. Ms. Pereira did not have authority to transfer money in or from the BoA Account. Nor did Ms. Pereira have authority to manage DCR Marketing's funds. The BoA Account and Funds belong to DCR Marketing. Ms. Pereira does not have any legitimate claim of right to ownership of the BoA Account or Funds, and other funds that were transferred or withdrawn from the BoA Account.

56. Accordingly, DCR Marketing seeks a declaration that it is the rightful owner of the BoA Account, and that the BoA Funds, and other funds that were transferred or withdrawn from the BoA Account, are owned by, due, and payable to DCR Marketing.

### As and For Their Third Cause of Action
**Declaratory Judgment - PNC Account**

57. Plaintiffs repeat and reallege each of the allegations contained in the previous paragraphs above as though fully set forth herein.

58. Ms. Pereira is not a shareholder, director, or officer of DCR Marketing. Ms. Pereira provided legal services to DCR Marketing as its outside counsel.

59. DCR Marketing had authorized Ms. Pereira to open an account for DCR Marketing at PNC for the deposit of funds of DCR Marketing for its prepaid card business.

60. Ms. Pereira did not have authority to transfer money in or from the PNC Account. Nor did Ms. Pereira have authority to manage DCR Marketing's funds. The PNC Account and Funds belong to DCR Marketing. Ms. Pereira does not have any legitimate claim of right to ownership of the PNC Account or Funds, and other funds that were transferred or withdrawn from the PNC Account.

61. Accordingly, DCR Marketing seeks a declaration that it is the rightful owner of the PNC Account, and that the PNC Funds, and other funds that were transferred or withdrawn from the PNC Account, are owned by, due, and payable to DCR Marketing.

### As and For Their Fourth Cause of Action
**Injunctive Relief - Citibank Funds**

62. Plaintiffs repeat and reallege each of the allegations contained in the previous paragraphs above as though fully set forth herein.

63. In the absence of a temporary restraining order and order preliminarily and permanently ordering that the Citibank Funds are owned by, due, and payable to DCR Strategies, DCR Strategies will suffer immediate and irreparable harm and DCR Strategies will be unable to provide services to its customers.

64. Accordingly, DCR Strategies is entitled to a temporary restraining order and order preliminarily and permanently ordering that the Citibank Funds are owned by, due, and payable to DCR Strategies.

65. DCR Strategies is also entitled to an order that Citibank deposit the Citibank Funds into the Court registry.

### As and For Their Fifth Cause of Action
### Injunctive Relief - BoA Funds

66. Plaintiffs repeat and reallege each of the allegations contained in the previous paragraphs above as though fully set forth herein.

67. In the absence of a temporary restraining order and order preliminarily and permanently ordering that the BoA Funds are owned by, due, and payable to DCR Marketing, DCR Marketing will suffer immediate and irreparable harm and DCR Marketing will be unable to provide services to its customers.

68. Accordingly, DCR Marketing is entitled to a temporary restraining order and order preliminarily and permanently ordering that the BoA Funds are owned by, due, and payable to DCR Marketing.

69. DCR Marketing is also entitled to an order that BoA deposit the BoA Funds into the Court registry.

### As and For Their Sixth Cause of Action
### Injunctive Relief - PNC Funds

70. Plaintiffs repeat and reallege each of the allegations contained in the previous paragraphs above as though fully set forth herein.

71. In the absence of a temporary restraining order and order preliminarily and permanently ordering that the PNC Funds are owned by, due, and payable to DCR Marketing,

DCR Marketing will suffer immediate and irreparable harm and DCR Marketing will be unable to provide services to its customers.

72. Accordingly, DCR Marketing is entitled to a temporary restraining order and order preliminarily and permanently ordering that the PNC Funds are owned by, due, and payable to DCR Marketing.

73. DCR Marketing is also entitled to an order that PNC deposit the PNC Funds into the Court registry.

### As and For Their Seventh Cause of Action
### Common Law Conversion - Citibank Account

74. Plaintiffs repeat and reallege each of the allegations contained in the previous paragraphs above as though fully set forth herein.

75. Ms. Pereira, intentionally and without authority, assumed or exercised control over personal property belonging to DCR Strategies, namely the Citibank Funds, and other funds that were transferred or withdrawn from the Citibank Account. Ms. Pereira had no possessory right or interest in those funds and interfered with DCR Strategies' personal property in derogation of DCR Strategies' rights.

76. DCR Strategies is entitled to a judgment of civil liability against Ms. Pereira for common law conversion in the amount of funds Ms. Pereira converted from the Citibank Account.

### As and For Their Eighth Cause of Action
### Common Law Conversion - BoA Account

77. Plaintiffs repeat and reallege each of the allegations contained in the previous paragraphs above as though fully set forth herein.

78. Ms. Pereira, intentionally and without authority, assumed or exercised control over personal property belonging to DCR Marketing, namely the BoA Funds, and other funds that were

transferred or withdrawn from the BoA Account. Ms. Pereira had no possessory right or interest in those funds and interfered with DCR Marketing's personal property in derogation of DCR Marketing's rights.

79. DCR Marketing is entitled to a judgment of civil liability against Ms. Pereira for common law conversion in the amount of funds Ms. Pereira converted from the BoA Account.

<u>**As and For Their Ninth Cause of Action**</u>
**Common Law Conversion - PNC Account**

80. Plaintiffs repeat and reallege each of the allegations contained in the previous paragraphs above as though fully set forth herein.

81. Ms. Pereira, intentionally and without authority, assumed or exercised control over personal property belonging to DCR Marketing, namely the PNC Funds, and other funds that were transferred or withdrawn from the PNC Account. Ms. Pereira had no possessory right or interest in those funds and interfered with DCR Marketing's personal property in derogation of DCR Marketing's rights.

82. DCR Marketing is entitled to a judgment of civil liability against Ms. Pereira for common law conversion in the amount of funds Ms. Pereira converted from the PNC Account.

<u>**As and For Their Tenth Cause of Action**</u>
**Computer Fraud and Abuse Act (18 U.S.C. § 1030) - Citibank Account**

83. Plaintiffs repeat and reallege each of the allegations contained in the previous paragraphs above as though fully set forth herein.

84. On or about January 16, 2019, Ms. Pereira changed the online login credentials for the Citibank Account without authorization from DCR Strategies and without informing DCR Strategies.

85. When DCR Strategies discovered it was unable to access the Citibank Account, representatives of DCR Strategies notified Ms. Pereira, who falsely responded that Citibank was "closing" the Account. Ms. Pereira abruptly ended her relationship with DCR Strategies the next day.

86. Ms. Pereira intentionally accessed a protected computer without authorization (or exceeded her authorized access) by changing the online login credentials for the Citibank Account without authorization from DCR Strategies and without informing DCR Strategies. Ms. Pereira thereby fraudulently obtained information contained in a financial record of a financial institution, namely the Citibank Account information at Citibank. Ms. Pereira did so knowingly and with intent to defraud DCR Strategies, and by means of such conduct, fraudulently obtained access to hundreds of thousands of dollars being held in the Citibank Account.

87. DCR Strategies is entitled to a judgment of civil liability against Ms. Pereira for violation of 18 U.S.C. § 1030 in the amount of funds Ms. Pereira converted from the Citibank Account.

<u>**As and For Their Eleventh Cause of Action**</u>
**Computer Fraud and Abuse Act (18 U.S.C. § 1030) - BoA Account**

88. Plaintiffs repeat and reallege each of the allegations contained in the previous paragraphs above as though fully set forth herein.

89. Ms. Pereira changed the online login credentials for the BoA Account without authorization from DCR Marketing and without informing DCR Marketing.

90. Ms. Pereira intentionally accessed a protected computer without authorization (or exceeded her authorized access) by changing the online login credentials for the BoA Account without authorization from DCR Marketing and without informing DCR Marketing. Ms. Pereira thereby fraudulently obtained information contained in a financial record of a financial institution,

namely the BoA Account information at BoA.  Ms. Pereira did so knowingly and with intent to defraud DCR Marketing, and by means of such conduct, fraudulently obtained access to hundreds of thousands of dollars being held in the BoA Account.

91.     DCR Marketing is entitled to a judgment of civil liability against Ms. Pereira for violation of 18 U.S.C. § 1030 in the amount of funds Ms. Pereira converted from the BoA Account.

### As and For Their Twelfth Cause of Action
### Computer Fraud and Abuse Act (18 U.S.C. § 1030) - PNC Account

92.     Plaintiffs repeat and reallege each of the allegations contained in the previous paragraphs above as though fully set forth herein.

93.     Ms. Pereira changed the online login credentials for the PNC Account without authorization from DCR Marketing and without informing DCR Marketing.

94.     Ms. Pereira intentionally accessed a protected computer without authorization (or exceeded her authorized access) by changing the online login credentials for the PNC Account without authorization from DCR Marketing and without informing DCR Marketing.  Ms. Pereira thereby fraudulently obtained information contained in a financial record of a financial institution, namely the PNC Account information at PNC.  Ms. Pereira did so knowingly and with intent to defraud DCR Marketing, and by means of such conduct, fraudulently obtained access to hundreds of thousands of dollars being held in the PNC Account.

95.     DCR Marketing is entitled to a judgment of civil liability against Ms. Pereira for violation of 18 U.S.C. § 1030 in the amount of funds Ms. Pereira converted from the PNC Account.

**WHEREFORE**, DCR Marketing Inc. and DCR Strategies Legal Inc. respectfully request a judgment:

1. Declaring that DCR Strategies is the rightful owner of CitiEscrow Control Interest Account, No. ******2596, and that the Citibank Funds are owned by, due, and payable to DCR Strategies;

2. Declaring that Ms. Pereira has does not have any legitimate claim of right to ownership of the Citibank Account or Funds, and other funds that were transferred or withdrawn from the Citibank Account;

3. Ordering that Citibank deposit the Citibank Funds into the Court registry;

4. Declaring that DCR Marketing is the rightful owner of BoA Business Advantage Checking Account No. ********0412, and that the BoA Funds are owned by, due, and payable to DCR Marketing;

5. Declaring that Ms. Pereira has does not have any legitimate claim of right to ownership of the BoA Account or Funds, and other funds that were transferred or withdrawn from the BoA Account;

6. Ordering that BoA deposit the BoA Funds into the Court registry;

7. Declaring that DCR Marketing is the rightful owner of PNC Business Checking Preferred Account No. **-****-4959, and that the PNC Funds are owned by, due, and payable to DCR Marketing;

8. Declaring that Ms. Pereira has does not have any legitimate claim of right to ownership of the PNC Account or Funds, and other funds that were transferred or withdrawn from the Citibank Account;

9. Ordering that PNC deposit the PNC Funds into the Court registry;

10. Declaring that Ms. Pereira bears civil liability to DCR Strategies and DCR Marketing for common law conversion;

11. Declaring that Ms. Pereira bears civil liability to DCR Strategies and DCR Marketing for violation of 18 U.S.C. § 1030;

12. Discharging Citibank, BoA, and PNC from all further liability in connection with, arising out of, or relating to, the Citibank Funds, BoA Funds, and PNC Funds, respectively; and

13. Awarding such other and further relief as the Court deems just and proper.

Respectfully submitted,

s/Michael C. Brett
Michael C. Brett (NY Bar No. 5482930)
Derek W. Edwards (TN BPR No. 021455)
(*Application for admission pro hac vice to be submitted*)
WALLER LANSDEN DORTCH & DAVIS, LLP
511 Union Street, Suite 2700
Nashville, Tennessee 37219
Telephone:   (615) 244-6380
Facsimile:    (615) 244-6804
Email:         derek.edwards@wallerlaw.com
                   mike.brett@wallerlaw.com

*Attorneys for DCR Marketing Inc. and DCR Strategies Legal, Inc.*